*837 OPINION OF THE COURT
George L. Jurow, J.
The Department of Social Services (hereinafter DSS) has filed an objection to a decision rendered on December 27, 1993 by Hearing Examiner Dorothy McCarrick.
The issue presented in this case is whether the prohibition against cancellation of child support arrears under Family Court Act § 451 can be reconciled with the competing and seemingly contradictory statutory provisions of Family Court Act § 413 (1) (g) and Social Services Law § 137. The court believes that this is a case of first impression in New York and that the Legislature, by passing Family Court Act § 413 (1) (g) and Social Services Law § 137, did envision the propriety of canceling arrears under very limited circumstances. Whether cancellation of arrears is appropriate must be determined on a case-by-case basis.
The court has reviewed the record in the instant case in its entirety, including the transcript of the support hearing.
FACTUAL BACKGROUND
On July 21, 1991, DSS filed a petition for support on behalf of the assignor against respondent father. On September 17, 1991, the respondent appeared in court and a temporary order of support in the amount of $25 per month was set. The matter was adjourned to December 9, 1991 at which time respondent failed to appear and a final order of support of $100 per week was entered on default.
An enforcement petition was then filed by DSS on September 10, 1993 and adjourned to November 23, 1993. Respondent appeared on that date and announced that he himself was now receiving public assistance. Shortly thereafter, respondent filed a petition to terminate the order of support.
At the December 27, 1993 hearing on the issue of arrears and the propriety of continuing the support order, respondent testified that he had been receiving public assistance since mid-June 1992. He stated that he and the assignor (his legal wife) had reconciled at some point subsequent to that and he was placed on the assignor’s public assistance budget as of March 15, 1993. The testimony was not disputed by DSS. Respondent acknowledged that he had never petitioned to terminate the support order prior to receiving notice regarding the violation petition.
After hearing his testimony (and reviewing the supporting *838 documentation), the Hearing Examiner did two things. First, she terminated the order of support nunc pro tunc to the date the respondent appeared on the assignor’s budget, March 15, 1993. DSS acknowledged the propriety of this step. The next step taken by the Hearing Examiner, however, provides the basis for DSS’s objection.
The Hearing Examiner, after terminating the support order, adjusted the arrears downward from $12,600 to $4,200. The Hearing Examiner first vacated $4,000 in arrears which had accrued from the time respondent was placed on the assignor’s budget until the court date. Next, she reduced arrears by another $3,900 and replaced that with a cap of $500. It was explained to DSS that under the Hearing Examiner’s reading of the statute (referring obviously to Family Court Act § 413 [1] [g]), arrears could not accrue in excess of $500 during the period respondent was himself receiving public assistance. DSS objected to this interpretation, but agreed that no appellate court ruling has offered any clear guidance on this debate. Thus, Hearing Examiner McCarrick ultimately set final arrears at $4,200, covering the period during which the support order was in effect and the respondent was not receiving any public assistance, but had nonetheless failed to pay any child support.
LEGAL ANALYSIS
A review of the relevant statutes and case law compels this court to concur with the decision of Hearing Examiner McCarrick.
DSS argues that Family Court Act § 451 strictly prohibits the cancellation of any child support arrears. Read in a vacuum, that statute does indeed seem to preclude the cancellation of arrears. That section provides in part: "The court has continuing jurisdiction over any support proceeding brought under this article until its judgment is completely satisfied and may modify, set aside or vacate any order issued in the course of the proceeding, provided, however, that the modification, set aside or vacatur shall not reduce or annul child support arrears accrued prior to the making of an application pursuant to this section” (emphasis added). This statute is unequivocal in its prohibition against cancellation of child support arrears. However, a point well made in the Supplementary Practice Commentaries suggests a less severe approach to the application of this section: "There can be no *839 doubt that the overriding Legislative intent running throughout the recent numerous amendments to Article 4 has been that arrears were too easily vacated in the past and that they should be treated as a debt owed to the petitioner. The stringent rules that were adopted were a reasonable response to the extreme problems petitioners faced in enforcing support orders. Thus, it is understandable that some supporters of stronger support enforcement will be unhappy with any suggestion that courts retain even a limited power to vacate arrears. Nevertheless, such a restricted power does not seem inconsistent with the underlying legislative intent so long as it is used sparingly — and to avoid grievous injustice. ” (Besharov, 1986 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 451, 1994 Pocket Part, at 107 [emphasis added].)
Nor can Family Court Act § 451 be read in so isolated a manner as to contradict other express statutory provisions.* This court assumes that Hearing Examiner McCarrick was referring to Family Court Act § 413 (1) (g) when stating her perceived inability to permit arrears to accrue in excess of $500. This section reads in pertinent part: "Where the noncustodial parent’s income is less than or equal to the poverty income guidelines amount for a single person as reported by the federal department of health and human services, unpaid child support arrears in excess of five hundred dollars shall not accrue.”
This provision is equally as explicit and controlling in the instant case as is Family Court Act § 451. The statutes are not mutually exclusive; they must be read together to achieve a result that is realistic and reasonable.
Giving additional support to a less draconian application of Family Court Act § 451 is Social Services Law § 137 which succinctly states: "All moneys or orders granted to persons as public assistance or care pursuant to this chapter shall be inalienable by any assignment or transfer and shall be exempt from levy and execution under the laws of this state.”
The interplay between Social Services Law § 137 and Family Court Act § 413 (1) (g) was discussed by the Court of Appeals in Matter of Rose v Moody (83 NY2d 65 [1993]), although the Court in that case focused on a different section of the latter statute than that applicable to the case at bar. *840 Nonetheless, the Court of Appeals recognized that for a court to decree that an individual “owes what she cannot realistically or legally pay is not only unjust and inappropriate, it is a legal pretense” (at 70). Furthermore, the Court reasoned, to indulge the Department of Social Services’ demand for an order of support against a person receiving public assistance, and against whom, therefore, under Social Services Law § 137 is immunized from levy and the execution of judgments, would result in offering DSS a “mere showpiece” (at 71). There can be no value in issuing an order which not only from a practical standpoint, but from a legal standpoint as well, is completely unenforceable.
CONCLUSION
The weakness in DSS’s argument is that it focused on a sole statutory section and focused myopically. Common sense dictates that all applicable statutes must be considered as well as their combined effect. Reading the statutes together, as the Court of Appeals did in Rose v Moody (supra), provides a logical and comprehensive structure under which DSS can collect child support from noncustodial parents when appropriate. If another arm of DSS is incidentally providing those (formerly) noncustodial parents with public assistance, then that arm of DSS should notify the other branch of the agency which is seeking money from those very same welfare recipients. Although this places the burden on DSS to keep its records straight, it does not seem like an undue burden to place on a government agency with administrative, regulatory, and enforcement responsibilities.
Although this entire dispute could have been avoided had either the respondent come forward to terminate the support order once he began to receive welfare, or more significantly, had DSS’s "taking” branch known what its “giving” branch was doing, Hearing Examiner McCarrick’s interpretation of Family Court Act § 413 (1) (g) is essentially correct: For the period during which the respondent was receiving public assistance, arrears could not accrue in excess of $500. Thus, the over-all arrears amount was appropriately modified downward by the Hearing Examiner to $4,200.
Based on the foregoing, DSS’s objections are denied in their entirety.

 It should be noted that in DSS’s objections no other statutes or cases were cited.